**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MORRISON COUNTY, MINNESOTA, RICHARDSON TOWNSHIP, and LEIGH TOWNSHIP, | Case No. 24-CV-23 (NEB/LIB) |
| Plaintiffs, | ORDER ON MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as United States Secretary of the Interior; BUREAU OF INDIAN AFFAIRS; TAMMIE POITRA, in her official capacity as the Midwest Regional Director, Bureau of Indian Affairs; ACTING MIDWEST REGIONAL DIRECTOR, BUREAU OF INDIAN AFFAIRS, and INTERIOR BOARD OF INDIAN APPEALS, | |
| Defendants. | |

This case involves a dispute over the federal government's decision to take land located in Morrison County, Richardson Township, and Leigh Township ("Plaintiffs") into trust for the Mille Lacs Band of Ojibwe ("Band") under Section 5 of the Indian Reorganization Act ("IRA"), 25 U.S.C. § 5108. Plaintiffs assert that the decision was: (1) biased and thus a violation of due process; (2) arbitrary, capricious, or an abuse of discretion; and (3) made pursuant to an unconstitutional statute.

The parties now cross-move for summary judgment. (ECF Nos. 42, 48.) Because the decision was neither arbitrary or capricious nor contrary to law, the Court denies Plaintiffs' motion and grants Defendants' motion.

## BACKGROUND

The Mille Lacs Band of Ojibwe has owned in fee 24 individual tax parcels containing over 3,000 acres ("Willmus land" or "the land") for decades. (ECF No. 17-8 at 261–93[1] ("Board Decision"); *id.* at 263, 273.) The 24 parcels connect to make a single, whole, rectangular property. (*Id.* at 273 n.12.) The northeast corner of one of the parcels touches the historic boundaries[2] of the Band's reservation. (*Id.* at 263.) The land is rural and undeveloped, and the Band uses it for cultural purposes such as hunting and gathering. (*Id.*) The Band wants to convert the land into trust, so it asked the Bureau of Indian Affairs ("BIA") to do so on its behalf under Section 5 of the IRA, 25 U.S.C. § 5108. (ECF No. 17-4 at 36–47 ("Director Decision"); *id.* at 36.)

The Willmus land is in two townships within Morrison County: Richardson Township and Leigh Township. (*See id.* at 36–37; Board Decision at 264.) After receiving

---

[1] All page citations to the record reference ECF pagination.

[2] The Court uses the term historic boundaries because the Board uses that term (Board Decision at 263), and Plaintiffs do not dispute that one parcel touches the corner of the historic boundaries of the Band's reservation. (ECF No. 44 at 19.) Even though the Court uses the term "historic boundaries," it expressly avoids opining on whether the reservation has been disestablished. That inquiry is not relevant to the legal issues before the Court.

2

the Band's application, the BIA's Acting Midwest Regional Director (the "Regional Director") solicited comments from the State and local governments. (Board Decision at 264.) Then, after considering the materials submitted, the Regional Director issued a decision taking the Willmus land into trust. (Director Decision at 36–47.) The Regional Director concluded that because one of the parcels touched the Band's reservation at a corner, the land was contiguous to an Indian reservation. (*See id.* at 38.) She therefore analyzed the fee-to-trust application under 25 C.F.R. Section 151.10, which governs the analysis for contiguous land, rather than Section 151.11, which governs the analysis for noncontiguous land. (*Id.*); *compare* 25 C.F.R. § 151.10 (2017[3]), *with* 25 C.F.R. § 151.11.

Plaintiffs timely appealed the Regional Director's decision to the Interior Board of Indian Appeals (the "Board"), and the Board affirmed the decision. (Board Decision at 292.) Plaintiffs now sue multiple defendants,[4] including the Regional Director in her official capacity, and the Board. Plaintiffs make, for the most part, the same arguments they made to the Board.[5]

---

[3] The Court applies the 2017 versions of the regulations because they were in effect at the time of the Regional Director and Board decisions. Unless noted otherwise, the Court's citation to the C.F.R. reflects the 2017 versions.

[4] The defendants are: Tammie Poitra, in her official capacity as the Midwest Regional Director, the Acting Midwest Regional Director, the Board, the BIA, the United States Department of the Interior, and the Secretary of the Interior. (ECF No. 1.)

[5] Plaintiffs raised the same constitutional claims on appeal to the Board, but the Board determined that it lacks authority to decide the constitutionality of federal statutes, so it did not address these arguments. (Board Decision at 291–92.) The Complaint asserts other

3

## ANALYSIS

**I.     Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a challenge to an agency action under the APA, the dispute can usually be resolved on summary judgment because '[t]he entire case on review is a question of law.'" *United Food & Com. Workers Union, Loc. No. 663 v. U.S. Dep't of Agric.*, 532 F. Supp. 3d 741, 768–69 (D. Minn. 2021) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

**II.    Due Process**

Plaintiffs assert that a Memorandum of Understanding ("MOU")—an agreement between the Band and BIA that creates additional staff positions to process fee-to-trust applications—biased the Regional Director's decision, and thus the decision violated due process.

"The Department of Interior's review of an application to take land in trust is subject to the due process clause and must be unbiased." *South Dakota v. U.S. Dep't of*

---

constitutional arguments that Plaintiffs did not raise in connection with the parties' cross-motions for summary judgment, so those arguments are waived. (ECF No. 1 ¶¶ 65–83); *see Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

*Interior* (*South Dakota III*),⁶ 401 F. Supp. 2d 1000, 1011 (D.S.D. 2005) (citation omitted), *aff'd*, (*South Dakota IV*), 487 F.3d 548 (8th Cir. 2007)); *see also Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (stating that a "fair trial in a fair tribunal is a basic requirement of due process" that "applies to administrative agencies which adjudicate") (citation modified).

When analyzing claims of judicial bias, the Court uses an objective inquiry and "asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009); *see In re Morgan*, 573 F.3d 615, 624 (8th Cir. 2009) (same). Plaintiffs bear the burden of establishing an "unconstitutional probability of bias." *Caperton*, 556 U.S. at 887. An "unconstitutional probability of bias" overcomes the "presumption of honesty and integrity in those serving as adjudicators" and violates due process. *See In re Morgan*, 573 F.3d at 624 (quoting *Withrow*, 421 U.S. at 47).

The Supreme Court has identified two instances of "extreme facts" that create an unconstitutional probability of bias. *Caperton*, 556 U.S. at 877–81; *see also South Dakota v. U.S. Dep't of Interior* (*South Dakota V*), 775 F. Supp. 2d 1129, 1138 (D.S.D. 2011) (describing two instances in which the Supreme Court requires recusal because of due process

---

⁶ There are multiple prior published opinions between the State of South Dakota and the United States Department of Interior involving fee-to-trust applications that this Court cites in this Order. To avoid confusion, the Court refers to them in chronological order as *South Dakota I, South Dakota II, South Dakota III, South Dakota IV*, and *South Dakota V*.

concerns). The first is when a decisionmaker has a financial interest in the outcome. *Caperton*, 556 U.S. at 876 (noting that a due process violation occurs when a judge has "a direct, personal, substantial, pecuniary interest" in the case) (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). The second is "when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016); *see also Caperton*, 556 U.S. at 880–81 (describing cases in which due process required recusal because of a judge's participation in an earlier proceeding).

This MOU does not create an unconstitutional probability of bias. The MOU uses "funds provided by Participating Tribes to supplement BIA staff . . . whose sole duties and responsibilities will be to process Fee-to-Trust applications," but the MOU does not implicate or fund the Regional Director, who is the final decision maker. (ECF No. 17-9 at 74–84.) The Regional Director received no money from the Band; her decision did not impact her financially at all. *See South Dakota V*, 775 F. Supp. 2d at 1139 (rejecting due process argument, even though the BIA staff deciding the fee-to-trust application was a member of the Tribe, because he received his salary regardless of the decision).

Plaintiffs next argue that bias exists because the record lacks evidence that the Regional Director reviewed the Band's application. But the Regional Director's deliberative process is privileged, and her signature when issuing her decision establishes that she independently reviewed the materials and reached her own conclusion. *See Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1211

6

(8th Cir. 2008) (discussing the Freedom of Information Act deliberative process privilege). There is no evidence in the record suggesting otherwise. And none of Plaintiffs' other arguments concern the types of extreme facts that the Supreme Court has held violate due process.[7]

### III.   APA

Under the APA, a court may set aside an agency's action if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see South Dakota IV*, 487 F.3d at 551. Plaintiffs bear the burden of proving that an agency acted arbitrarily or capriciously. *South Dakota v. U.S. Dep't of Interior* (*South Dakota II*), 423 F.3d 790, 800 (8th Cir. 2005). An agency's action is arbitrary or capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*El Dorado Chem. Co. v. U.S. Env't Prot. Agency*, 763 F.3d 950, 955–56 (8th Cir. 2014) (citation omitted).

---

[7] For example, though Plaintiffs urge otherwise, the Court cannot infer any suggestion of bias from the administrative communications between the BIA and the Band; these are routine communications about the fee-to-trust application procedure. Plaintiffs also rely on reports from the Government Accountability Office and Inspector General that expressed concerns over MOUs, but those MOUs predate the MOU here by over six years and differ substantively. Neither argument rises to the level of concern contemplated by *Caperton*.

In reviewing agency action, the Court examines the full administrative record but does "not substitute [its] judgment for that of the agency, even if the evidence would have also supported the opposite conclusion." *South Dakota II*, 423 F.3d at 799 (citations omitted). The Court asks whether the agency "articulated a rational connection between the facts found and the choice made," and "will reverse only when there is no rational basis for the policy choice." *Id.* at 799–800 (citation modified). The agency "need not exhaustively analyze every factor, but must base its determination 'upon factors listed in the appropriate regulations' and must use a 'reasonable interpretation of the regulation and the statute' in reaching its conclusion." *Id.* at 800 (citation omitted); *see Zimmer Radio of Mid-Missouri, Inc. v. Fed. Commc'ns Comm'n*, 145 F.4th 828, 846 (8th Cir. 2025) ("[W]hen an agency exercises discretion . . . judicial review is typically conducted under the [APA's] deferential arbitrary-and-capricious standard." (citation omitted)).

Plaintiffs argue that the Regional Director should have applied 25 C.F.R. Section 151.11 instead of Section 151.10. Next, they contend that even if Section 151.10 applies, the Regional Director misapplied it. The Court disagrees on both fronts.

A.   *Section 151.10 vs. 151.11*

When considering a fee-to-trust land application, the Secretary will evaluate the acquisition under 25 C.F.R. Section 151.10 if the land is "contiguous to an Indian reservation." If the land is noncontiguous, the Secretary applies Section 151.11. Section 151.11 includes much of the Section 151.10 criteria, as well as additional criteria.

8

*1.    Contiguous*

The parties do not dispute that the corner of one of the 24 parcels comprising the Willmus land touches the historic boundaries of the Band's reservation. The question is whether a parcel that touches an Indian reservation[8] at a point is contiguous.

The Regional Director, relying on the BIA's Fee-to-Trust Handbook, concluded that the Willmus land is contiguous to an Indian reservation. (Director Decision at 38.) The Handbook defines contiguous as "parcels of land having a common boundary . . . including parcels that touch at a point." (*id.* at n.3 (quoting U.S. Dep't of the Interior, Bureau of Indian Affairs, Acquisition of Title to Land Held in Fee or Restricted Fee Status ("Handbook") at 4 (2016).) The Board, after detailed analysis, affirmed the Regional Director's interpretation. (Board Decision at 270–72.)

The parties argue under the premise that the term contiguous is ambiguous, and the Court agrees. To interpret the word contiguous, the Court begins with the text and gives words their ordinary meaning at the time of the regulation's enactment. *Wis. Cent. Ltd v. United States*, 585 U.S. 274, 277 (2018). In 1995, the Department of Interior ("Department") amended its regulations so that Section 151.10 would apply to

---

[8] Plaintiffs' argument that the Band's reservation has been disestablished does not affect the contiguous analysis because an Indian reservation, as used in 25 C.F.R. Section 151, is defined as "that area of land over which the tribe is recognized by the United States as having governmental jurisdiction . . . or where there has been a final judicial determination that a reservation has been disestablished or diminished, Indian reservation means that area of land constituting the former reservation of the tribe as defined by the Secretary." 25 C.F.R. § 151.2.

"contiguous" land, and it added Section 151.11 for noncontiguous land. *See* Land Acquisitions (Nongaming), 60 Fed. Reg. 32874 (June 23, 1995); 25 C.F.R. §§ 151.10, 151.11 (1995). At the time of the Regional Director's decision, the IRA and Section 151 did not define contiguous.

The 1995 ordinary meaning of contiguous does not resolve the issue. In 1995, Black's Law Dictionary and Merriam-Webster defined contiguous to include "touching at a point," but two other dictionaries did not include that language in their definition. *Compare Contiguous*, Black's Law Dictionary (6th ed. 1990) *and Contiguous*, Merriam-Webster's Collegiate Dictionary (10th ed. 1993), *with Contiguous*, American Heritage College Dictionary (3d ed. 1993) (defining contiguous as "Sharing an edge or boundary; touching" and "Neighboring; adjacent") *and Contiguous*, The New Shorter Oxford English Dictionary (4th ed. 1993) (defining contiguous as "Neighbouring, in close proximity" and "Touching, in contact; adjoining"). Thus, these authorities reveal that the text is ambiguous, so the Court applies other interpretation tools.

Ordinarily, one such tool is the regulatory history. *See Est. of Farnam v. Comm'r*, 583 F.3d 581, 584 (8th Cir. 2009). But the record, as well as the Department's responses during the notice and comment period, sheds little insight into how the Department defined contiguous in 1995. *See* Land Acquisitions (Nongaming), 60 Fed. Reg. 32874 (June 23, 1995).

The Court also looks at the language of related regulations, but they are inconclusive as well. *See United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 277 (1975) (using a related statute to assist in statutory interpretation). One related Department regulation promulgated by the BIA under the Indian Gaming Regulatory Act of 1988 ("IGRA"),[9] includes "touch[ing] at a point" in its contiguous definition. 25 C.F.R. § 292.2 (2008). So, if the Department intended contiguous to include touching at a point in fee-to-trust applications, it could have defined contiguous explicitly, as it did in the IGRA. *See Carcieri v. Salazar*, 555 U.S. 379, 391 (2009) ("Had Congress intended to legislate such a definition, it could have done so explicitly" as it did in related sections of the statute). On the other hand, other Department regulations, promulgated by the Bureau of Safety and Environmental Enforcement (rather than the BIA), explicitly exclude cornering parcels from their definition of contiguous, which could suggest that contiguous includes touching at a point unless stated otherwise. 30 C.F.R. §§ 250.105, 250.1001 (2011). Because the Department defined contiguous inconsistently elsewhere, related regulations do not resolve the ambiguity the Court faces here.

Then, in 2023, the Department updated Section 151 and defined contiguous to include "parcels that touch at a point." Land Acquisitions, 88 Fed. Reg. 86222, 86250 (Dec. 12, 2023); 25 C.F.R. § 151.2 (2023). But this too is inconclusive. This change could reflect the Department formalizing its long-standing practice. Land Acquisitions, 88 Fed. Reg.

---

[9] 25 U.S.C. § 2701, *et seq*.

11

86222, 86223 (Dec. 12, 2023) (stating that the final rule "articulates criteria for processing" contiguous acquisitions and "includes certain presumptions intended to improve efficiency based on the BIA's longstanding practices and experiences"); Handbook at 4 (defining contiguous to include parcels that touch at a point). Or it could suggest that contiguous did not mean touching at a point, hence the update. After all, in 2008, the Board noted that, "it has been held repeatedly by the Department that lands which merely corner each other are not contiguous." *Jefferson Cnty., Or., Bd. of Comm'rs*, 47 IBIA 187, 205 (2008). But in that decision, the Board specifically avoided deciding the issue. *Id.* at 205–06.

So, after independently interpreting the regulation, the Court concludes that contiguous is ambiguous.[10] And having made this conclusion, a court will defer to the agency's interpretation if it is: (1) reasonable; (2) the agency's authoritative or official position; (3) based on the agency's substantive expertise; and (4) fair and considered. *Kisor v. Wilkie*, 588 U.S. 558, 575, 577–79 (2019).[11] All four criteria are met here.

---

[10] Plaintiffs also argue the land is not contiguous because the Band sought review under both Section 151.10 and Section 151.11, but if anything, this further shows that contiguous is ambiguous.

[11] Plaintiffs contend that the Court should not apply this deference because it conflicts with the reasoning in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron* deference). (ECF No. 44 at 11 n.1.) While the Eighth Circuit has not addressed the issue, many other circuits have held that *Loper Bright* did not alter the analysis for interpreting ambiguities in *regulations*, and they continue to apply *Kisor*. *United States v. McIntosh*, 124 F.4th 199, 205 n.3 (3d Cir. 2024) (collecting cases from the Third, Fourth, Seventh, and Ninth Circuits); *United States v. Prather*, 138 F.4th 963, 974–75 (6th Cir. 2025);

12

First, contiguous is ambiguous and could reasonably include touching at a point. This interpretation is supported by two dictionary definitions and aligns with the BIA's historical practice. (Board Decision at 270–72.)

Second, the interpretation is authoritative because it comes from not just the Regional Director, but also the Board, and the Board is delegated authority to issue final decisions for the Department. Thus, this interpretation is "one actually made by the agency." *Kisor*, 588 U.S. at 577; *cf. id.* (collecting cases of ad hoc statements made by mid-level employees that were not authoritative).

Third, the Regional Director and Board routinely evaluate these fee-to-trust applications, so their interpretation is grounded in substantive expertise.

Fourth, this interpretation is fair and considered. The interpretation aligns with standard BIA practice, so it is not a "*post hoc* rationalization," nor does it create "unfair surprise." *Id.* at 579 (citation modified); Handbook at 4 (describing BIA "standard procedures" and defining contiguous to include touching at a point). And the Board's process for reaching this interpretation was considered: it analyzed the text as well as the purpose and history of the IRA and its regulations. (Board Decision at 270–72.)

---

*United States v. James*, 135 F.4th 1329, 1334 n.1 (11th Cir. 2025); *see also Texas v. U.S. Env't Prot. Agency*, 137 F.4th 353, 371 (5th Cir. 2025) (stating that the court will apply deference to the agency's interpretation of its regulation if the regulation is ambiguous and the interpretation is reasonable).

Thus, the Court defers to the agency's interpretation that contiguous includes "touching at a point." Because the interpretation is not "plainly erroneous or inconsistent with the regulation" it is entitled to "controlling weight." *Kisor*, 588 U.S. at 568 (citation omitted) (describing *Auer* deference).

2.   *Separate Parcels*

Next, the Court must decide whether the 24 parcels can be treated as one piece of property. Plaintiffs assert that the parcels should be analyzed separately; i.e., they contend that even if one parcel is contiguous, the other 23 are not and should have been analyzed under Section 151.11.

The Court agrees with the Board that nothing in the IRA or Section 151 mandates analyzing each tax parcel separately. (Board Decision at 273.) Sections 151.10 and 151.11 refer to "land," not parcels. 25 C.F.R. § 151.10 ("The Secretary will consider the following . . . when the land is . . . contiguous to an Indian reservation . . . ."); § 151.11 ("The Secretary shall consider the following . . . when the land is . . . noncontiguous . . . .").

Plaintiffs claim that two Board decisions that describe land by separate parcels show that the Board should have analyzed the 24 parcels separately here, but neither case supports that position. In *Arizona State*, the Board grouped the land by different parcels in its background section, but did not differentiate between parcels when it analyzed whether the Regional Director properly considered Section 151.10(f). *Ariz. State Land Dep't.*, 43 IBIA 158, 172–73 (2006). In *Desert Water*, the Board analyzed all the parcels

14

together except for one because the Tribe admitted that parcel was "non-abutting," and the record lacked sufficient evidence to determine whether the parcel was contiguous. *Desert Water Agency*, 63 IBIA 127, 135–36 (2016).

In contrast, Plaintiffs do not dispute that the parcels here connect to make a single rectangular property that touches the historic boundaries of the Band's reservation at a corner. (ECF No. 44 at 19.) Nothing in these cases conflict with the Board's claim that it has previously "described trust properties comprising multiple contiguous tax parcels as a single 'property.'" (Board Decision at 274).[12] Because one corner of the land touches an Indian reservation, and all parcels connect to make one whole piece of property, analyzing the land together was not arbitrary or capricious.

### B.     *Application of Section 151.10*

Next, Plaintiffs contend that even if Section 151.10 applies, the Regional Director misapplied its criteria. The Court disagrees. Section 151.10 requires that the Secretary consider whether statutory authority exists for the Department to accept the land into trust, the need and purpose of the land, tax impacts, the capacity of the BIA to handle

---

[12] Even if the BIA and Band have described the Willmus land using the separate tax parcels, noting the underlying land classifications when discussing property is not evidence that the parcels must be analyzed separately. And because the Court does not face Plaintiffs' hypothetical argument that a tribe could obtain land "by cornering properties across several square miles" and avoid application of Section 151.11 by treating those parcels as contiguous "no matter the number, size, or distance from the reservation," the Court avoids opining on that scenario. (ECF No. 44 at 24.)

additional responsibilities, jurisdictional and conflicts of land problems, and environmental concerns. 25 C.F.R. § 151.10.

In a detailed analysis, the Regional Director considered each criterion in turn. Guided by federal treaties and statutes, she concluded that the Band was under federal jurisdiction when Congress enacted the IRA, so the Secretary had authority to take the land into trust.[13] (Director Decision at 40–41.) She determined that the land would restore land loss, facilitate "tribal self-determination and self-sufficiency," and allow the Band to continue using the land for cultural purposes like hunting and gathering. (*Id.* at 41–42.) Then, using information from comments received, she estimated Plaintiffs' tax losses.[14] (*Id.* at 42–43.) She also identified additional BIA staff who could assist the Band[15] and concluded that Morrison County would retain concurrent law enforcement jurisdiction.

---

[13] Whether the Band's reservation has been disestablished does not impact the Secretary's authority to take the land into trust.

[14] Plaintiffs did not provide the Regional Director with specific evidence that accepting the land into trust would lead to future tax increases and affect programs or services. (Director Decision at 43.) While Plaintiffs are not legally required to provide this information, the Regional Director did not act irrationally in declining to give weight to Plaintiffs' speculative and general assertions. And because Plaintiffs did not provide this information to the Regional Director, the Board did not abuse its discretion when it declined to consider the evidence raised during the appeal. (Board Decision at 278–80); 43 C.F.R. § 4.318.

[15] While the Regional Director identified staff, she noted that additional responsibilities "are foreseen to be minimal." (Director Decision at 45.)

(*Id.* at 43–45.) Finally, she analyzed the environmental criteria and concluded no further compliance was required. (*Id.* at 45–46.)

The Regional Director was not obligated to "exhaustively analyze every factor." *South Dakota II*, 423 F.3d at 800 (citations omitted). She considered each of the criteria in Section 151.10 and provided a detailed analysis, with which the Court agrees. Her decision, and the Board's decision affirming her decision, are not arbitrary or capricious.

### IV.     Constitutional Challenges

Finally, Plaintiffs contend that Section 5 of the IRA violates the nondelegation doctrine and exceeds Congress's power under the Indian Commerce Clause. In asserting these claims, Plaintiffs ask the Court to reject binding caselaw.

But the Court is bound by precedent and therefore rejects Plaintiffs' arguments. The Eighth Circuit has rejected a nondelegation challenge to Section 5 of the IRA. *South Dakota II*, 423 F.3d at 799;[16] *see also Cnty. of Charles Mix v. U.S. Dep't of Interior*, 674 F.3d 898, 902 (8th Cir. 2012) (declining to revisit the nondelegation issue addressed in *South Dakota II*).[17] And the Supreme Court has repeatedly held that the Indian Commerce Clause vests Congress with broad "power to legislate in the field of Indian affairs." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989); *see Haaland v. Brackeen*, 599 U.S.

---

[16] Section 5 of the IRA was codified at 25 U.S.C. Section 465 when the Eighth Circuit issued *South Dakota II*.

[17] Because Section 5 of the IRA is constitutional, the Court also rejects Plaintiffs' argument that 25 C.F.R. Section 1.4 is unconstitutional.

255, 275 (2023) ("Congress's power to legislate with respect to Indians is well established and broad."); *Upstate Citizens for Equal., Inc v. United States*, 583 U.S. 1004 (2017) (Thomas, J., dissenting from denial of certiorari) (arguing that "[w]e should have granted certiorari to reexamine our Indian Commerce Clause precedents" because "[u]nder our precedents" Congress can take Indian land into trust). This Court is bound by that precedent. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023).

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion for Summary Judgment (ECF No. 42) is DENIED; and

2. Defendants' Motion for Summary Judgment (ECF No. 48) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 26, 2025                                 BY THE COURT:

                                                         s/Nancy E. Brasel
                                                         Nancy E. Brasel
                                                         United States District Judge